## CITY OF PONTIAC *v.* WATERFORD TOWNSHIP.

INJUNCTION—SEWAGE SYSTEM—APPROVAL OF CONNECTION.

Shopping center's 8″ sanitary sewer, designed to serve 20 stores and having a capacity of 600,000 gallons per day, connected with township's sewerage system which had been constructed pursuant to a contract with adjoining city and permitting 4″ to 6″ house connections without city's special approval, *held,* to constitute an enlargement or addition of city's system not covered by the contract and to have required the prior approval of the city before being made, hence, gave rise to injunctive relief to city to sever the connection.

Appeal from Oakland; Black (Eugene F.), J., presiding. Submitted June 14, 1956. (Docket No. 74, Calendar No. 46,776.) Decided September 4, 1956.

Bill by City of Pontiac, a municipal corporation, against Waterford Township, a municipal corporation, its supervisor and township board, and Pon-

REFERENCES FOR POINTS IN HEADNOTES
38 Am Jur, Municipal Corporations § 565.

tiac Shopping Center, Inc., a Michigan corporation, to enjoin connection of private lateral sewer. Decree for plaintiff. Defendants appeal. Affirmed.

*Glenn C. Gillespie* and *William A. Ewart,* for plaintiff.

*Friedman, Meyers & Keys* and *John Bell* (*Donald E. Barris* and *Bernard Goodman,* of counsel), for defendants.

SHARPE, J. This case involves the construction of a contract entered into between the city of Pontiac and the township of Waterford in Oakland county relative to the use by the township of Pontiac's sewerage system. The contract was entered into in December, 1935, and under its terms the city of Pontiac granted a license to the township of Waterford permitting the township to connect a portion of its sewerage system, serving an area of approximately 1 square mile and designated as "area tributary to Pontiac sewerage system," to the Pontiac sewerage system.

The contract provides, in part:

"License is hereby given the said township to connect that part or parts of its sanitary sewage system, located in the area as shown by the attached map, to that of the said city, at such place or places as the city may specify, provided, however, that the property located on the west side of North Telegraph road, between Boston avenue and Elizabeth Lake road, now connected to the city sanitary sewer on North Telegraph road is expressly excepted from the terms of this agreement. * * *

"No future construction work in connection with said sewers, improvements or enlargements thereon, shall be commenced until the city engineer has had at least 48 hours notice. * * *

"The township will comply with all the requirements now or hereafter in use by the city relative to the maintenance and operation of its sewerage system, will promptly pass the attached resolution and do such other acts as are necessary to accomplish that end.   *   *   *

"It is expressly understood that the township is desirous of obtaining the service from the city in order to eliminate the necessity of constructing and maintaining its own sewage disposal plant at this time, and to give health protection to the inhabitants of a part of the township and that it acquires no permanent or vested rights in the sewerage system of the city.  The city gives to the township a license to connect with its sewerage system in order to provide sanitary sewage disposal facilities to that area of the township designated on the attached map, for its sanitary sewerage as a health measure, and to protect the water supply and public health of the city."

The resolution referred to in the contract also provides, in part:

"The sanitary sewer system of the township of Waterford consists of main and lateral conduits built of glazed vitrified pipe, concrete pipe, brick, glazed vitrified segmented block or iron pipe, with the necessary accessories.  They are designed to carry off all liquid house waste, and are known herein as sanitary sewers.  The sewers in the streets passing in front of the various lots are called main or lateral sewers; the sewers leading from the main or lateral sewers to the property on either side are called house drains or connections.   *   *   *

"No connection with any sewer of the sanitary system within the township of Waterford and no extension of any house drain or from a connection previously made shall be made by any person, firm or corporation until a written permit for doing the same shall have been obtained from the township clerk.  Any person, firm or corporation desiring to

make a house drain connection or any other kind of a connection with the sewer system of Waterford township shall first make an application to the township clerk for a permit to make such connection on a form prepared by the township board and in a manner prescribed by said board and shall pay to the township treasurer such fees and charges as are required by the township board before such permit shall become operative. Any connection with any Waterford township sewer made without first making the application and securing the permit herein provided for, or in any manner not herein prescribed for such connection shall subject the person, firm or corporation making the same, and the owner or owners of the premises for which such connection is made, to a penalty hereinafter prescribed.   *   *   *

"Y branches or stubs shall be placed at frequent intervals, 1 or more for every lot. A record of the location of such Y branches or stubs shall be kept at the office of the township clerk and shall be furnished to the licensed sewer builder but at the risk of licensed sewer builder as to the accuracy of the same. All connections with the sewers of the sanitary system must be made at such Y branch or stubs or in the event that it is necessary to make such connections with the sewer at a point where a Y or stub has not been provided, the connections shall be made by inserting a Y or stub in the main sewer or lateral but no such connection shall be made except with the approval of the township engineer and in the presence of the city sewer inspector. The breaking of any pipe, of any main sewer or lateral sewer to connect a house drain except as above provided, shall be deemed a misdemeanor, and subject the sewer builder making such connection to a fine, as hereinafter provided, and in addition thereto, he shall pay all the expenses of taking up such sewer and rebuilding it to the satisfaction of the township engineer and city inspector and on his failure so to do shall forfeit his license as a sewer builder.

"At least 24 hours' notice in writing must be given at the office of the township clerk before any street or public way can be opened for the purpose of laying a house drain. No work of laying house drains can be commenced or continued unless permit is on the line of the work in the hands of the licensed sewer builder or one employed by him. * * *

"The house drain, from a point 3 feet outside of the house to the curb line, shall be of A-1 standard socket salt-glazed vitrified earthenware pipe, unless laid less than 3 feet in depth, when it shall be of cast or wrought iron. Its interior diameter shall be 4 inches. Outside the curb line the interior diameter shall be 6 inches. The connection between 4- and 6-inch pipe shall be made with the increaser. All earthenware pipe shall be of the best quality of hard-burned vitrified shale pipe, with sockets and of a make and quality to be approved by the township engineer."

In 1954 defendant Pontiac Shopping Center, Inc., acquired an 80-acre tract of land and are now in the process of constructing a shopping center. The shopping center is rectangular in form, extending 1,250 feet along the west side of Telegraph road with an east and west depth of 775 feet. The shopping center when completed will have approximately 20 stores. In August, 1955, Pontiac Shopping Center constructed an 8-inch sanitary sewer, extending across its own lands, south from the southwest corner to cross Elizabeth Lake road to connect with the Elizabeth Lake road sewer. The sewer in question was designed to furnish sewer facilities for all the stores. It was constructed of a standard 8-inch vitrified sewer crock, extending from a standard manhole at the rear of the store building, a distance of approximately 292.2 feet, to a similar manhole built over the 8-inch township sewer on the south side of Elizabeth Lake road where it was to be connected with the township sewer system. The sewer was

designed to care for an estimated flow of 20,000 gallons of sewage per day, but had a capacity large enough to take care of a flow of 600,000 per day.

Waterford township issued a permit to a licensed sewer contractor to install a connection to serve a single building structure constituting the Pontiac Shopping Center. On about August 27, 1955, the contractor commenced work pursuant to the permit issued by the township. The work consisted of the installation of an 8-inch connection to the sewer located on the south side of Elizabeth Lake road. A representative of the city, noting the work being done, notified the contractor to cease work. Upon failure to cease the work of constructing the sewer, the city of Pontiac filed a bill of complaint in which it is alleged that the township of Waterford breached the license agreement by permitting the connection of the sewer in question. The bill of complaint, in part, alleges:

"That on Saturday, August 27, 1955, the defendants permitted and caused certain enlargements and additions to the township sewer system to be made without compliance with said sections 2 and 3 of the agreement of December 10, 1935 and which enlargements and additions have now been made and are now a part of the sewage system of the city of Pontiac extending into the township of Waterford, that no approval was obtained from the city commission or the city engineer and the agreement of December 10, 1935 has been entirely ignored by said defendants. * * *

"That the defendants have, in order to obtain the approval of the State of Michigan, misrepresented their sewer project as a dwelling house connection which is a fraudulent misrepresentation and part of the general scheme to illegally enlarge their sewer system without complying with the State law or the agreement between the city and the township. * * *

"Plaintiff further shows that the activities over the week end of August 27, 1955 resulting from the defendants' permission to extend the sewer system is in direct violation of the agreement of December 10, 1935 and that under the terms of said agreement hereto attached and marked exhibit 'A', the permission of the city commission must first be obtained before any enlargements or additions to the Waterford sewage system can be made, that in view of the defendants' refusal to obtain said permission the installation and the enlargement of sewers caused to be made by them is illegal and of no force and effect and the use of that portion of said sewer system so constructed should be enjoined and restrained by an injunction from this honorable court.

"That plaintiff has no adequate remedy at law other than the remedy provided by mandatory injunction ordering the defendants to sever the connection made to the sewer in Elizabeth Lake road and connected to the city sewer system. That the amount involved in this litigation exceeds the sum of $100 and involves many thousands of dollars."

The cause came on for trial and at its conclusion the court entered a decree, which, in part, reads as follows:

"Now, therefore, on due consideration thereof, it is ordered, adjudged and decreed, and the court does hereby order, adjudge and decree, that the defendants, township of Waterford and the Pontiac Shopping Center, Inc., their agents and officials be restrained and enjoined from permitting or allowing any sewage from the 8″ sewer line on the Pontiac Shopping Center property to be emptied into the Elizabeth Lake sewer as shown on exhibit 'B' attached to plaintiff's bill of complaint, and that said defendant, the Pontiac Shopping Center, Inc., its agents and employees, be restrained and enjoined from diverting or emptying any sewage into said Waterford township sewer on the south side of Eliz-

abeth Lake road in the township of Waterford or causing the same to be done."

In an opinion the trial court stated:

"Two related clauses of the contract are, in opinion of the chancellor, quite decisive. They are:

" '2. That all plans and specifications for the proposed township sanitary sewerage system, together with any changes, enlargements or additions shall first be submitted and approved by the city commission and filed in the office of the city engineer of said city before any proposals shall be asked for by the said township, or any work or undertaking shall be commenced looking to the construction, modification or alteration of the same.'

" '9. The township will pay unto the city the following sums per year:

" 'Single-family residences—$11.50 per connection.

" 'Multiple dwellings or apartments—$11.50 per suite. (Up to 10 suites.)

" 'Large apartments—$8.50 per suite. (Ten or more suites.)

" 'Schools—50¢ per capita. (Based on average attendance.)

" '*For the connection of any classification not mentioned above, the amount of charge to be agreed upon by the city and township before connecting.'* * * *

"Here we have a sanitary sewer designed to carry a disposal burden far in excess of that imposed by an ordinary subdivision of residences. It was shown in the course of proof that a corresponding shopping center of the same approximate size had been figured and designed to handle a sewage burden at the rate of 32,000 gallons per day. No expert is required to perceive that it would take quite a subdivision of new residences in Waterford township, fronting public streets served as to sewage disposition by an aforesaid 'enlargement' or 'addition,' to provide an equaling treatment burden. Yet the latter 'enlargement' or 'addition' admittedly requires city commission consent—whereas the Pontiac Shopping Center

connection, simply because it is constructed in private property, does not according to defendants require such consent. The contention is strained and finds no support, express or implied, in the wording of the contract documents.    *    *    *

"The court might well stop here, with recorded ruling that Pontiac Shopping Center's attempted use of Pontiac's sewage treatment plant constitutes an 'enlargement' or 'addition' of the township sanitary sewage system which, under clause 2 of the contract, requires as a condition of connection due approval of the Pontiac city commission. Clause 9 of the contract, however, should settle the issue for those who still stand in doubt. By that clause no connection with the contract-identified township sewage system, of a type not specifically defined in the clause (and no party or counsel claims that Pontiac Shopping Center's attempted connection fits any of the specific definitions of the clause), is to be made until the city and township have agreed on the connection charge. Under such clause alone, Pontiac not having agreed to receive and treat additional quantities of township sewage excepting it be duly paid in accordance with that clause, it, as plaintiff, is entitled to the presently sought injunctive relief."

Defendants appeal and urge that the connection installed by and at the sole expense of Pontiac Shopping Center from its building to the Waterford township sewer was not a "change, enlargement or addition" to the Waterford township sewerage system requiring the city of Pontiac's approval. Under the contract between the city and township, the township has sole authority to issue permits for "house connection" and such house connection may be connected to the township sewerage system without first securing the consent of the city. It is urged by defendants that a house connection is not an extension, addition or enlargement of the township sewerage system and they have introduced evidence

in support of this claim. We note that the resolution setting up the township sewerage system states that the system was "designed to carry off all liquid house waste." Moreover, under the township resolution the diameter of house drains was limited to 4 inches to the curb, and to 6 inches from the curb to the sewer. Such drains were also required to be connected to the township sewerage system at a point where a Y or stub had been provided, and with the approval of the township engineer.

In the case at bar defendants constructed a sewer extension at a cost of about $5,000. It was constructed of the same size sewer crock as the main sewer (8 inches), with standard size clean out manholes at each end and designed to serve approximately 20 stores with a daily capacity of an estimated 20,000 gallons.

The only question before our Court is whether the defendants violated the contract between the city and township. No equities are involved.

In our opinion the construction of an 8-inch sewer by defendants constitutes an enlargement or addition to the township's sewerage system. Such an addition requires the approval of the city of Pontiac. Failure to apply for or receive such approval is a violation of the contract between the city and township and gives the city a right to injunctive relief.

The decree is affirmed, with costs to plaintiff.

DETHMERS, C. J., and SMITH, EDWARDS, BOYLES, KELLY, and CARR, JJ., concurred.

BLACK, J., did not sit.